In the years 1773 and 1774, Thomas Newton, as representative of Robert Tucker, deceased, lent to the treasurer of Virginia, pursuant to law, several sums of money, for which bonds were executed. On the 4th of September, 1778, Newton received a certificate for 2801. being the amount of two years interest on the largest bond. Subjoined to a copy of that certificate is a memorandum of the auditor, in which he reduces it by the scale at four for one; and it appears that a warrant issued for interest to the first of January, 1788.
On the 28th of December 1790, an act was passed intitled “an act granting a sum of money to William Shannon and' others,” au-thorising the auditor to issue warrants on the aggregate fund for the principal and interest due on the bonds. It did not appear that those warrants had ever been applied for by Newton. A portion of his claim having been rejected by the auditor, he appealed to the District Court of Richmond: where the points in controversy were, 1. Whether he was entitled to interest on the bonds since the act of 1790; 2. Whether the certificate aforesaid, reduced according to the scale, should be considered as a payment of its nominal amount. The first “point was decided in favour of Newton, the second in favour of the Commonwealth; on behalf of which an appeal was taken to this Court.
*The Attorney-General, for the-Commonwealth, was about to argue the point, with respect to the proprietj' of applying the scale of depreciation to the certificate for interest issued in 1778; when the counsel for the appellee observed, that he did not mean to press that point, but should submit it to the Court, without argument.
He then contended that interest, on the bonds, ought not to be allowed after the passage of the act of 1790; 1st. Because the-auditor was directed to issue warrants to-Newton chargeable on the aggregate -fund,, for the amount of the debt; 2d. Because the presumption is, that the act passed at the instance of Newton ; who, it is believed, was a member of the Legislature at the time; 3d. Because the auditor was always ready to issue the warrants, on application ; and, 4th. Because the Legislature, at the same session, constituted an aggregate fund, out of which they were to, be paid. This law directing the payment of the debt annulled the old bonds; and may be considered equal to a tender between individuals.
Randolph, for the appellee. In times of great distress, Newton lent a considerable sum of money to the government of Virginia. The principal remained unpaid throughout the war; though the interest was received in paper money; and, in the loss sustained thereby, Newton only shared the fate of other citizens.
It was the duty of the auditor to issue his warrants annually for the interest; and nothing but an actual payment of the principal could prevent it. It is true that in 1790, an act passed directing the auditor to issue his warrants on the aggregate fund, for the amount of this debt; but the strongest presumptive evidence of the property- of that fund, was that Newton did not receive payment. Admitting him to have been a member of the Legislature at that time, and that he applied for his money, was he bound to receive a paper drawn on a fund to be composed of arrear-ages of taxes, which might never come into the treasury? If he had not discovered, upon inquiry, that there was no money in that fund, he certainly would have received his warrants from the auditor.
The passage of this law may be likened to an order drawn by an individual to discharge an old Aebt. Where a collateral fund is provided to discharge an existing debt, if the fund prove unproductive, the debt remains unsatisfied. Unless it be shewn that the Commonwealth had money lying in the aggregate fund, to discharge *53 ■this debt, the interest cannot be extinguished.
*'Attorney-General, in reply. There is no evidence that the aggregate fund was in the situation represented by Mr. Randolph. Ought not Newton, by ■some act, to have shewn that he disapproved of the law, or that he had applied at the treasury and could not receive his money? There-is such violent presumption of his assent, that proof to the contrary must come from him, not from the Commonwealth. There certainly is some weight in the objection, that the act of 1790, created a new debt; and that unless Newton could shew that he had applied at the treasury for payment under the law, without effect, the interest ought to cease.
Wednesday, November S. The President delivered the opinion of the Court, (all the Judges being present,) that the judgment of the District Court should be affirmed.